## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION
### *Electronically filed*

| | | |
|---|---|---|
| **STUMBO, INC., d/b/a** | § | |
| **HENDERSON FORD,** | § | **CASE NO.:** |
| | § | |
| **Plaintiff** | § | **1:19-CV-00168-GNS** |
| | § | |
| **v.** | § | |
| | § | |
| **COIN DATA, LLC,** | § | **DEFENDANTS' RESPONSE TO** |
| **DEALER COMPUTER SERVICES, INC.** | § | **PLAINTIFF'S MOTION TO STAY** |
| **and THE REYNOLDS AND** | § | **ARBITRATION** |
| **REYNOLDS COMPANY** | § | |
| **Defendants** | § | |

Defendants, Coin Data, LLC, Dealer Computer Services, Inc., and The Reynolds and Reynolds Company ("Defendants"), respectfully file this Response to Plaintiff, Stumbo, Inc. d/b/a Henderson Ford's (Plaintiff or Stumbo) Motion to Stay Arbitration.

### Summary

Plaintiff's Motion to Stay Arbitration must be denied for at least five (5) independent reasons based on established authority from the Supreme Court:

I.      Plaintiff's arguments attack the contract as a whole and not the arbitration clause in particular.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010).

II.      The contracts delegate issues of arbitrability to the arbitrators by incorporating the commercial rules of the American Arbitration Association. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019).

III.      Plaintiff does not even address the delegation provisions in the arbitration agreements and the provisions are thus enforceable.    *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010).

IV.    Plaintiff's motion fails to address the elements of injunctive relief or offer any evidence that would satisfy the prerequisites for an injunction.    *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)

V.    The Federal Arbitration Act applies in both state and federal court. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008.

## Background facts

When Plaintiff, Stumbo, Inc. bought the assets of Dempewolf Ford, it agreed to assume liability for three (3) existing contracts with the Defendants, Dealer Computer Services, Inc., Coin Data, LLC, and The Reynolds and Reynolds Co. [Doc.. # 2-2, p. DCS 0237, Doc. # 2-4, p. DCS 0247, Doc. # 2-5, p. DCS 0264].   Dave Stumbo personally executed amendments to the contracts in which he agreed to assume "all rights, obligations, and responsibilities of Dealer under this Agreement."   (*see e.g.* Doc. # 2-2, p. DCS0237).

Within months after Stumbo acquired the dealership, it installed competitive products and defaulted on the remaining obligations under the contracts it had agreed to assume.   On September 16, 2019, Defendants requested written assurances on each contract.   Stumbo refused to respond.

All three contracts contain broad form arbitration agreements calling for binding arbitration of "all disputes." [Doc. # 2-2, p. DCS 013, Doc. # 2-3, p. DCS 241, Doc. # 2-4, p. DCS 251].   All three contracts incorporate the commercial rules of the American Arbitration Association delegating issues of arbitrability to the arbitrators to decide.   *Id.*

Plaintiff does not dispute that it agreed to assume the contracts.   Plaintiff does not dispute the existence or the scope of the agreements to arbitrate.   Plaintiff has the burden of proof to establish material facts that the arbitration agreements are somehow invalid or unenforceable. Plaintiff has not offered any proof, only unsubstantiated allegations.

## Procedural background

On October 24, 2019, Defendants filed a demand for arbitration with the American Arbitration Association in accordance with the contractual requirements for dispute resolution. On December 11, 2019, a panel of three arbitrators were appointed and confirmed, and on December 17, 2019, a preliminary conference was conducted by the arbitration panel. The arbitration panel is currently considering proposed scheduling orders and a date for the final hearing.

Seeking to avoid arbitration, on November 1, 2019, Stumbo filed a lawsuit in Kentucky state court requesting a declaratory judgment that it was not bound by the arbitration agreements contained in each of the three contracts. The Plaintiff's pleadings in state court do not seek an injunction but only declaratory relief. The elements for seeking injunctive relief are not addressed in the state court lawsuit or in this motion to stay.

On November 14, 2019, Defendants removed the case to federal court based upon diversity of citizenship. [Doc. #1]. Defendants also filed a motion to compel arbitration. [Doc. # 4]. Plaintiff has filed a motion to remand and a response to the motion to compel arbitration. These matters have been briefed and are pending before the court. Defendants incorporate the motions, responses and replies contained therein.

## Argument

## I.     Plaintiff's arguments are directed at the contract as a whole

The Supreme Court has made clear that "[a] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Rent-A-Center*, 561 U.S. 63 at 70-71, citing

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("Attacks on the validity of the entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken.").

Review of the allegations in the complaint make clear that the allegations are directed to other provisions of the contract and to the contract as a whole.   Paragraph 16 alleges that "A dispute has arisen between the Parties herein regarding Plaintiff's contractual ability to terminate the contract . . . ." [Doc. # 1-1, p. 6].    Plaintiff's allegations continue at paragraph 20 that "[s]pecifically, an actual controversy exists as to whether a valid choice of law provision exists in the arbitration provision . . . ." [Doc. #1-1, p. 7].    Plaintiff's allegations continue at paragraph 21 that "an actual controversy exists as it relates to the enforceability and validity of the arbitration provision . . . on the basis of fraud, lack of consideration, lack of mutuality and/or procedural and/or substantive unconscionability." [*Id.*]

The allegations related to the contractual ability to terminate the contract do not have anything to do with the arbitration provisions.    And Plaintiff fails to identify any particular section of the contract that authorizes it to terminate the contract.    Indeed, the contract provides for a specific term, and the contract cannot be terminated before the end of the term in 2021.

With respect to the Plaintiff's allegations regarding a valid choice of law provision, the choice of law provisions are not contained in the arbitration provisions.    The choice of law provisions are separate and independent provisions in the contract.    The choice of law provisions have nothing to do with the arbitration provisions.

And with respect to the allegations of fraud, lack of consideration, lack of mutuality and/or procedural or substantive unconscionability, Plaintiff does not allege any facts that would support

4

these legal conclusions.    As is stated in Defendant's responses to other motions, Plaintiff does not outline what representations were made, who made the representations, to whom the representations were made and how the recipient relied upon the misrepresentations.    With respect to lack of consideration, these contracts have been in place for 25 years and DCS and Dempewolf have performed under these contracts for all these years.    The mutuality of the reciprocal obligation has been established through 25 years of the course of dealing between the parties. And both parties are sophisticated business entities that negotiated the purchase of Dempewolf's dealership.    These allegations are not "plausible" as a matter of law.    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).        Plaintiff's failure to offer any evidence, or even any plausible allegations, is fatal to its claim under Sixth Circuit precedent:

> Thus, when asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue.    If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration.    If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question.  9 U.S.C. § 4.    <u>In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate.    The required showing mirrors that required to withstand summary judgment in a civil suit.</u>

*Great Earth Co.s, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (emphasis added).    "This means that the defendant must show that there is a genuine issue of material fact regarding the validity of the agreement to arbitrate . . . . If the defendant does not come forward with evidence placing the validity of the arbitration agreement 'in issue,' the Court must compel arbitration." *BLC Lexington SNF, LLC v. Oatis*, 2019 WL 6221006 at *3, Cause No. 5:19-284-DCR (E.D. Ky. Nov. 20, 2019), citing *Great Earth*.    "In order to show the validity of an arbitration agreement, Kentucky law provides for a burden-shifting framework: the party seeking arbitration satisfies its

prima facie burden by simply providing a copy of the written and signed arbitration agreement, then the burden shifts to the opposing party to show a lack of an agreement." *Atkins v. CGI Technologies and Solutions, Inc.*, 339 F. Supp. 3d 619, 629 (E.D. Ky. 2018). Stumbo offers no evidence to place the arbitration provision "in issue."

Stumbo disingenuously attempts to couch the dispute as involving the arbitration provision. "Plaintiff's contractual ability to terminate the contract," or whether there is "a valid choice of law provision" attacks provisions of the contract separate and apart from the arbitration provisions. Stumbo cannot have it both ways. Stumbo attempts to mischaracterize the allegations in an effort to avoid established case law that an attack on the contract as a whole is to be decided by the arbitrators. Analysis of the allegations in the complaint make clear that Stumbo is simply attempting to avoid going to arbitration.

## II.     The contracts delegate issues of arbitrability to the arbitrators by incorporating the American Arbitration Association rules

The United States Supreme Court in 2010 acknowledged that an arbitration provision can delegate to the arbitrators issues of arbitrability.

> The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.

*Rent-A-Center, West, Inc. v.   Jackson*, 561 U.S. 63, 69 (2010).

Indeed, every circuit court to consider the issue of whether the incorporation of the American Arbitration Association rules delegate the responsibility of determining arbitrability has held that the incorporation of the American Arbitration Association rules "clearly and unmistakably" delegates the responsibility to the arbitrators.

6

> Virtually every circuit court to have considered the issue has determined that the incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Arnold v. Homeaway, Inc*., 890 F.3d 546, 552 (5th Cir. 2018).  ("We have held that, generally, stipulating that the AAA Rules for governing arbitration of disputes constitutes such 'clear and unmistakable' evidence.").

 As recently as 2019, the United States Supreme Court has recognized that the rules of the American Arbitration Association authorize arbitrators to resolve arbitrability questions.

> The rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions. [citation omitted] Schein contended that the contracts express incorporation of the American Arbitration Association rules meant that an arbitrator – not the court – had to decide whether the arbitration agreement applied to this particular dispute.

*Henry Schein, Inc. v. Archer and White Sales, Inc*., 139 S. Ct. 524, 529 (2019).   The Court held that a "wholly groundless" exception was inconsistent with the terms and conditions of the Federal Arbitration Act and was not valid.

The Sixth Circuit also in 2019 acknowledged and applied the mandate in *Henry Schein*. *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019).   The Sixth Circuit specifically held in *McGee* that the incorporation of the AAA rules into the contract was a delegation of all questions of arbitrability to the arbitrator, leaving no issues for the court to decide.

> This Circuit previously held that when parties expressly delegate arbitrability to the arbitrator, such a "delegation applies only to claims that are at least arguably covered by the agreement."  *See Tari v. Main Street Adoption Services, LLP*, 633 F.3d 496, 511 (6th Cir. 2011).  Under this approach, an arbitrator does not have the authority to decide the arbitrability of claims "clearly outside the scope of the arbitration clause."  *Id.* at 507.  But the Supreme Court recently rejected that approach, specifically pointing to our decision in *Tari* as one whose holding it disapproved.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 528- 529 (2019).

7

*McGee v. Armstrong*, 941 F.3d 859 at 866.

After *Henry Schein* and *McGee*, the only question that remains for the court is whether the contract contains a delegation provision.

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances a court possesses no power to decide the arbitrability issue.

*Henry Schein, Inc. v. Archer and White Sales, Inc.* 139 S.Ct. 524, 529 (2019); *see also Turner v. Pillpack, Inc.*, 2019 WL 2314673 at *6, Cause No. 5:18-CV-66-TBR (W.D. Ky., May 30, 2019) (applying *Henry Schein*).

Following *Henry Schein* and *McGee*, Judge Russell of the Western District of Kentucky as recently as May of this year held that the incorporation of the American Arbitration Association Rules delegates these questions to the arbitrator.

> The rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions. When parties agree to settle claims related to a contract according to the rules of the AAA "they provide a 'clear and unmistakable' delegation of scope determining authority to an arbitrator" because the AAA rules provide that "the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . . scope . . . . of the arbitration agreement.'"

*Turner v. Pillpack, Inc.* 2019 WL 2314673 at *6, Cause No. 5:18-CV-66-TBR (W.D. Ky. May 30, 2019) (collecting cases). The court went on to state:

> When the parties' contract delegates the arbitrability question to the arbitrator, a court may not override the contract . . . . In those circumstances, a court possesses no power to decide the arbitrability issue.

*Id at *6*, quoting *Henry Schein*, 139 S. Ct. at 529.

Each of the contracts specifically stipulates in the arbitration provision to the application of the American Arbitration Association Rules. The Dealer Computer Services contract provides

that "the arbitration shall be governed by the commercial arbitration rules of the American Arbitration Association unless the parties agree to other rules and procedures." [Doc. # 4-2, p. 61]. The COIN-DATA contract states that "[t]he parties mutually agree that any and all claims, disputes or controversies arising out of or relating to this Agreement will be submitted to mandatory arbitration in accordance with the commercial rules of the American Arbitration Association (AAA)." [Doc. # 4-3, p. 290].   The Reynolds and Reynolds contract provides under dispute resolution that "the parties mutually agree that any and all claims, disputes or controversies arising out of or relating to this Agreement will be submitted to mandatory arbitration in accordance with the commercial rules of the American Arbitration Association (AAA)." [Doc. # 4-4, p. 301]. Any issues raised regarding the scope or enforceability of the arbitration provisions are specifically delegated to the arbitrators.

### III.  Plaintiff Stumbo does not even address the indisputable fact that all three contracts contain delegation clauses

The Supreme Court made clear in *Rent-A-Center* the consequences when the delegation provision is not addressed:

> Accordingly, unless *Jackson* challenged the delegation provisions specifically, we must treat it as valid under §2, and must enforce it under §§3 and 4, leaving any challenge to the validity to the Agreement as a whole for the arbitrator.
>
> . . . .
>
> Nowhere in his opposition to *Rent-A-Center's* motion to compel arbitration did he even mention the delegation provision. [citation omitted] *Rent-A-Center* noted this fact in its reply: "[*Jackson's* response] fails to rebut or otherwise address in any way [*Rent-A-Center's*] argument that the Arbitrator must decide [*Jackson's*] challenge to the enforceability to the Agreement. Thus, [*Rent-A-Center's*] argument is uncontested."

*Rent-A-Center* 561 U.S. at 72. (emphasis in original).

9

In 2017, the Sixth Circuit reiterated and reaffirmed that the delegation provision must be specifically addressed or the matter is referred to the arbitrator.

> [A] party seeking to avoid the effects of a delegation provision must "challenge [ ] the delegation provision specifically." *Id.* If that party fails to do so, a court must treat the delegation provision as valid and enforce it as written.

*Danley v. Encore Group, Inc.* 680 Fed. Appx. 394, 398 (6th Cir. 2017).

Kentucky federal district courts have consistently applied this principle.   *See e.g., Mitchell v. EEG, Inc.*, 2016 WL 2903286 Cause No. 3:15-CV-00903-JHM (W.D. Ky. 2016).:

> Like the Plaintiff in *Rent-A-Center,* Plaintiff's response "fails to rebut or otherwise address in any way [*EEG's*] argument that the Arbitrator must decide [Plaintiff's] challenge to the enforceability of the agreement."
>
> . . . .
>
> Because Plaintiff's have failed to challenge the delegation provision specifically, *EEG's* argument that the delegation provision is enforceable remains uncontested. Accordingly, the Court need not reach Plaintiff's unconscionability argument as it pertains to the enrollment agreement. "The Court 'must treat [the delegation provision] as valid under § 2 [of the FAA] and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole to the arbitrator'"

*Mitchell v. EEG, Inc.* 2016 WL at *2-3.

As noted earlier, review of each of the three arbitration provisions makes clear that each provision incorporates the applicability of the American Arbitration Association rules. This fact cannot be disputed. And indeed, Defendants made clear in their motion to compel arbitration that each of the arbitration agreements contain and call for application of the American Arbitration Association rules.   [Doc. #4 at p. 40-41].   And yet, Stumbo does not even address the delegation provisions. The Supreme Court mandates that these are issues for the arbitrator and the court must compel arbitration.   *Novic v. Credit One Bank, N.A.* 757 Fed.Appx. 263, 265-266 (4th Cir. 2019) ("As part of their agreement to arbitrate, parties may consent to arbitrate the 'gateway' issue of

arbitrability, essentially allowing the arbitrator to determine his or her own jurisdiction . . . . [A]bsent a challenge to the validity of such delegation, courts will not intervene in interpreting the parties' agreement.   Thus, a party's challenge to a different contract provision or to the contract as a whole, will not prevent a court from submitting to the arbitrator the question of arbitrability."); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 554 (5th Cir. 2018) ("Unless the party resisting arbitration has challenged the delegation provision specifically, a court must treat it as valid, leaving any challenge to the validity of the agreement as a whole for the arbitrator. . .. Thus, *Rent-A-Center* holds that, in the absence of a challenge specifically to a delegation clause, validity challenges must be sent to an arbitrator."); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) ("When an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that particular provision.   Only if we determine that the delegation clause is itself invalid or unenforceable may we review the enforceability of the arbitration agreement as a whole.").

## IV.     Plaintiff does not address the elements of injunctive relief

Plaintiff's motion seeks injunctive relief.   A motion to stay arbitration is a request for injunctive relief that is evaluated under the traditional and well established standard required to obtain an injunction.   "When evaluating whether a stay [of arbitration] may be granted, courts look to the preliminary injunction standard."   *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (S.D.N.Y. 2013); *Deco, Inc. v. United Gov't Security Officers of Am.*, 2005 WL 2298166 at *6 (E.D.Va. 2005) (In a "motion to stay arbitration, the traditional standard employed is the same test used for preliminary injunction."); *In Re: American Express Financial Advisors Securities*

*Litigation*, 672 F.3d 113, 141 (2d. Cir. 2011).   As recently as last year, citing Sixth Circuit authority, this Court applied the traditional standard for injunctive relief to a plaintiff's "Verified Complaint seeking a declaratory judgment stating that it is neither a party to the Agreement nor bound by the Agreement's arbitration clause."   *Ohio River Valley Assoc., LLC v. PST Services, Inc.*, 2018 WL 773424 at *1, Cause No. 3:17-CV-00628-GNS (W.D. Ky. Feb. 6, 2018) (Stivers, J.).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7, 22 (2008); "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."   *Winter.* 555 U.S. at 20.   "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."   *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)

Plaintiff does not address, or even mention, the elements of proof necessary to obtain injunctive relief and it offers no evidence to satisfy those elements.   An injunction must be based on specific findings of fact.   *See* FED. R. CIV. P. 65(d)("Every order granting an injunction and every restraining order must state the reasons why it was issued.").   "A preliminary injunction may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019).   Absent any evidence, there is no basis for the Court to make the required findings.

**A.     There is no likelihood of success on the merits**

12

Where the agreement to arbitrate is valid, as it is here, "it necessarily follows" that the plaintiff has no likelihood of success on the merits. *CRT Capital Group v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 382 (S.D.N.Y. 2014); *Simmons v. Morgan Stanley Smith Barney, LLC*, 872 F. Supp. 2d 1002, 1022 (S.D. Cal. 2012) (where the agreement to arbitrate is valid "Plaintiff has failed to show that he is likely to succeed on the merits.").

Plaintiff's allegations are nothing more than unsupported conclusions. Plaintiff has not alleged any facts that would support these claims nor has it offered any evidence to satisfy its burden of proof. Plaintiff's conclusory assertions of fraud, lack of consideration, lack of mutuality and unconscionability are affirmative defenses on which Plaintiff bears the burden of proof. Having offered no evidence—or even plausible allegations—in support of these claims, Plaintiff cannot establish a likelihood of success on the merits.

Fraud must be pleaded with particularity. FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiff makes no such allegations here. Plaintiff does not allege that it received a misrepresentation, what was misrepresented, that it reasonably relied on any such misrepresentation, or that it suffered any injury as a result.

Even after making several written submissions to this Court, Plaintiff has still not offered any proof that it was unaware of the arbitration requirement when it agreed to assume the contracts. Plaintiff was certainly capable of reading the contracts before Mr. Stumbo signed them, and it has not denied that either Mr. Stumbo or someone on his behalf did, in fact, read the contracts before he agreed to accept assignment.

13

In *Anderson v. Luxury Imports of Bowling Green*, 2015 WL 5680455 at *4 (W.D.Ky. 2015) (Stivers, J.) this Court enforced an arbitration agreement against the employee of a car dealership, quoting the Supreme Court and the Kentucky Supreme Court for the proposition that "it will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or that he did not know what it contained.  If this were permitted, contracts would not be worth the paper on which they are written."  The Court held that "Anderson's failure to read the agreements does not preclude the enforcement of the arbitration agreements contained therein."  *Id.* at * 4.

Nor is there any evidence of either procedural or substantive unconscionability.  Plaintiff agreed to accept the contracts as part of the acquisition of Dempewolf Ford's assets.  It was under no compulsion to buy the dealership.  It was under no compulsion to accept assignment of Dempewolf's outstanding obligations.  It agreed to accept those assignments to get a better bargain by relieving Dempewolf Ford of those liabilities.  The assignments were the subject of a negotiated bargain between sophisticated commercial entities.

The mutuality argument is without foundation.  The contracts clearly contain reciprocal obligations, including the license to use Defendants' proprietary, industry leading software.  Defendants performed on these contracts for almost twenty five (25) years.  Dempewolf Ford repeatedly renewed the terms of the agreements.  Dempewolf Ford repeatedly expressed its satisfaction with the services that Defendants provided.  Dempewolf Ford used the Defendants products successfully in all aspects of its dealership operations.  Dempewolf Ford paid the regular monthly invoices for 25 years without complaint.

14

Finally, Plaintiff's assertion that "Kentucky law is clear that any contractual provision that is not conspicuous or within the contract is not enforceable" is both factually inapplicable and legally wrong.   (*See* Doc. # 9, Plaintiff's Motion to Remand, p. 4).   First, the arbitration provisions are perfectly conspicuous in the contracts.   The Dealer Computer Services Contract states at the top of the first page, in bold type, all capitalized letters: **"THIS AGREEMENT IS SUBJECT TO ARBITRATION UNDER APPLICABLE STATUTE."**   (Ex. 1, DCS 001). When Plaintiff accepted assignment of "all rights, obligations, and responsibilities of Dealer under this Agreement," it accepted assignment of the entire contract.   K.R.S. § 255:2-210(5).   There is nothing inconspicuous or hidden in the arbitration provisions contained in these contracts.   The essence of Plaintiff's argument seems to be that Mr. Stumbo did not read the contracts when he agreed to accept assignment of their obligations.   And that suggestion is plainly not a defense.

Second, the case cited by Plaintiff, *Bartelt Aviation, Inc. v. Dry Lake Coal Co., Inc.*, 682 S.W.2d 796, 798 (Ky. Ct.App. 1985), holds precisely the opposite of the proposition that Plaintiff would attribute to it.   The *Bartlett* case is clearly limited to the waiver of implied warranties under the U.C.C.   The Kentucky Supreme Court explained:

> Implied warranties are required to be "conspicuous," which the U.C.C. defines; there is not, however, a similar principle for arbitration agreements or incorporating language in general.   In fact, <u>what we said in *Bartlett Aviation* rings equally true today: "we know of no case law or statutes which require that incorporation language for an arbitration provision be stated in bold type or any unusual form."</u>

*Dixon v. Daymar Colleges Group, LLC*, 483 S.W.3d 332, 345 (Ky. 2013) (emphasis added).   The Sixth Circuit reached the same conclusion:

> In *Bartelt Aviation, Inc. v. Dry Lake Coal Co., Inc.*, 682 S.W.2d 796 (Ky.Ct.App. 1985) the court of appeals noted that *Hertz* relied on case law addressing a provision seeking to limit implied warranties—a provision which the law requires to be "conspicuous," that is, to be in larger or contrasting type.   *See Bartelt*, 682 S.W.2

15

> at 798.   The *Bartelt* court addressed an arbitration provision and concluded what
> when the incorporating language is above a contractor's signature, "we know of no
> case law or statutes which require that the incorporation language for the arbitration
> provision be stated in bold type or any unusual form."   *Id*.   In another arbitration
> clause case, Kentucky likewise required that the incorporating language merely be
> plain and clear.   *See Home Lumber Co. v. Appalachian Regional Hospitals, Inc.*,
> 722 S.W.2d 912, 914 (Ky.Ct.App.1987).

*Thompson v. The Budd Co.*, 199 F.3d 799, 810 (6th Cir. 1999).   There is simply no authority for

Plaintiff's proposition that an arbitration clause must be especially "conspicuous" to be

enforceable.   Both the Kentucky Supreme Court and the Sixth Circuit have held the exact

opposite, citing the very case upon which Plaintiff relies.

**B.      Plaintiff cannot show a likelihood of irreparable injury**

Irreparable injury is particularly difficult to prove in cases involving speculation about the

outcome of proceedings that have not yet taken place.   The Federal Arbitration Act provides a

statutory mechanism for vacating arbitration awards that do not satisfy its standards.   9 U.S.C. §

10.   There is no reason to believe—nor has it even been alleged—that Plaintiff will not receive a

fair and impartial arbitration hearing, under the well-established commercial rules of the American

Arbitration Association.   As the Seventh Circuit explained:

> The only potential injury from waiting until the arbitrators have made their award
> is delay and the out-of-pocket costs of paying the arbitrators and legal counsel.
> Long ago the Supreme Court held that the delay and expense of adjudication are
> not "irreparable injury"—if they were, every discovery order would cause
> irreparable injury.

*Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 872 (7th Cir. 2011).

Plaintiff has failed to even allege that it is facing any irreparable injury, nor has it provided

any description of what that injury might be or why it would be "irreparable."   As the Sixth Circuit

reiterated as recently as November of this year, proof of an irreparable injury is an essential

16

element of injunctive relief.   "[A] plaintiff *must* present evidence of an irreparable injury to get a preliminary injunction."   *D.T. v. Sumner County Schools*, 942 F.3d 324, 327 (6th Cir. 2019). Moreover, "to merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical."   *Id.* at 327.   The court made clear that "a district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury."   *Id.* at 327.   Without any evidence—or even any allegation—of an imminent, irreparable injury, there is no basis for the Court to make any such findings in this case.

### C.      Plaintiff makes no attempt to balance the equities

Plaintiff has not offered any argument—or evidence—as to the balance of the equities. Plaintiff is a sophisticated business entity that accepted these contracts as part of an acquisition of a business.   There are no allegations of any improprieties in the acquisition process.   Rather, it appears that Plaintiff simply does not want to honor the obligations that it willingly and freely assumed.   Plaintiff's position is severely lacking in any compelling equitable basis.

On the other hand, the strong, indeed "emphatic" federal policy in favor of arbitration weighs heavily on this element.   As recently as May 2018, the Supreme Court reiterated that the Federal Arbitration Act "establishes a liberal federal policy favoring arbitration agreements." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).   The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution."   *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1202 (2012).   The injunction that Plaintiff seeks is directly at odds with those policy preferences.

> A preliminary injunction would deny *Carilion's* right to a speedy and less expensive forum to adjudicate its underlying dispute with the plaintiffs.   Because arbitration is a highly favored mechanism for dispute resolution, equity favors permitting *Carilion's* arbitration to proceed.

*U.B.S. Financial Services, In. v. Carilion Clinic*, 880 F. Supp. 2d 724, 734 (E.D. Va. 2012).

    **D.**    **Plaintiff makes no attempt to show that an injunction would be in the public interest**

The role of the courts in enforcing arbitration agreements is anchored in the strong public policy interests in enforcing contracts.  The Supreme Court has repeatedly restated that public policy interest and American commercial relations have increasingly come to depend on the enforceability of arbitration agreements as a method to resolve disputes.  The venerable case of *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 (1985) continues to be regularly cited:

> The Act's centerpiece provision makes a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. § 2.  The liberal federal policy favoring arbitration agreements, manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual agreements: the Act simply creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.  As this Court recently observed, the preeminent concern of Congress in passing the Act was to enforce private agreements which parties had entered, a concern which requires that we rigorously enforce agreements to arbitrate.

In sum, the whole purpose of the Federal Arbitration Act is to validate and enforce agreements to arbitrate.  That public policy interest has been consistently upheld by the Courts. Plaintiff's request would undermine that interest by making it easy—indeed, trivial—to avoid arbitration merely by making conclusory allegations in a declaratory judgment action and using the mere existence of that action as a basis to avoid arbitration.

**V.**    **Standard and Burden of Proof**

Plaintiff asserts that "the Federal Arbitration Act is not controlling because a valid agreement to arbitrate does not exist under state law." [Motion, Doc. #11, p. 356].   This proposition is simply wrong.   The Federal Arbitration Act "applies in state as well as federal courts and forecloses state legislative attempts to undercut the enforceability of arbitration agreements.   The FAA's displacement of conflicting state law is now well-settled." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008).   Moreover, the Sixth Circuit has recognized that even when applying state law principles of contract interpretation, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Bratt Enterprises, Inc. v. Noble Int'l., Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003).

Plaintiff does not cite any authority for the application for a stay.   Section 4 of the Federal Arbitration Act authorizes the Court to grant a stay of litigation, but not a stay of a pending arbitration proceeding.   9 U.S.C. § 4.   "The Court's authority to enjoin arbitration proceedings is limited by the Federal Arbitration Act to situations where the underlying arbitration agreement is invalid or nonbinding.   Anti-arbitration injunctions issued by district courts where a valid agreement to arbitrate exists are strongly disfavored." *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 775 (S.D.N.Y. 2015).   As discussed above, in this case, the validity question is reserved for the arbitrator because the contract contains a delegation clause.

## Conclusion

Plaintiff is asking for extraordinary relief—an injunction prohibiting arbitration—without offering any evidence and without addressing any of the elements of injunctive relief.   The

proposed order Plaintiff submitted is telling.   It contains none of the findings required under Rule 65.

Nor does Plaintiff address the threshold issue that the agreements effectively delegate the issues of arbitrability to the arbitrators because they incorporate the commercial arbitration rules of the American Arbitration Association.   The authorities are essentially unanimous that the Court must compel arbitration when the agreement delegates the arbitrability decision to the arbitrators, as it does here.

Defendants respectfully submit that Plaintiff's Motion should be denied in its entirety, and that this case should be compelled to arbitration and dismissed.   Dismissal is the proper remedy when all of the claims are subject to arbitration.   *Polyone Corp. v. Westlake Vinyls, Inc.*, 2018 WL 2437241 at *12, Cause No. 5:17-cv-157-TBR (W.D.Ky. 2018).

*/s/ Kyle G. Bumgarner*
Thomas N. Kerrick
Kyle G. Bumgarner
KERRICK BACHERT, PSC
1025 State St.
Bowling Green, KY 42101
(270) 782-8160 (Tel)
tkerrick@kerricklaw.com
kbumgarner@kerricklaw.com

John C. Allen
JOHN C. ALLEN, P.C.
1600 Two Houston Center
909 Fannin St., Suite 1600
Houston, TX 77010 (713) 654-7000 (Tel)
(713) 654-7074 (Fax) jallenpc@swbell.net

ATTORNEYS FOR DEFENDANTS

20

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing instrument was electronically filed and served electronically, via U.S. mail, messenger, and/or facsimile transmission on the following on this the 2nd day of January, 2020:

David F. Broderick
Broderick & Davenport, PLLC
921 College St. — Phoenix Place
P.O. Box 3100
Bowling Green, KY 42101-3100 (270) 782-6700 (Tel)
(270) 782-3100 (Fax)


*/s/ Kyle G. Bumgarner*
Attorney for Defendants