UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00168-GNS


STUMBO, INC.
d/b/a/ HENDERSON FORD                                                                        PLAINTIFF

v.

COIN DATA, LLC;
THE REYNOLDS AND REYNOLDS COMPANY; and
FORD DEALER COMPUTER SERVICES, INC.                                      DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand (DN 9) and Motion to Stay

Arbitration (DN 11) and Defendants' Motion to Compel Arbitration and Dismiss (DN 4).  The

motions are ripe for adjudication.  For the reasons that follow, Plaintiff's motions are **DENIED**,

while Defendants' motion is **GRANTED**.

## I.      BACKGROUND

Plaintiff Stumbo, Inc. d/b/a/ Henderson Ford ("Plaintiff") is an automobile dealer.  (Notice

Removal Ex. A, at 3, DN 1-1).  On or about May 30, 2019, Plaintiff's predecessor-in-interest,

Dempewolf, Inc. d/b/a Dempewolf Ford ("Dempewolf") assigned its contractual interests with

Defendants to Plaintiff.[1]  (Notice Removal Ex. A, at 4, 11-13).  Each of these assigned contracts

---

[1] Dempewolf's assignment of its contract with Defendant Coin Data, LLC to Plaintiff provides:
"STUMBO, Inc. dba Henderson Ford . . . hereby accepts such assignment of this Agreement and
assumes all rights, obligations, and responsibilities of Customer under this Agreement."  (Notice
Removal Ex. A, at 11).  Dempewolf's assignment of its contract with Defendant Ford Dealer
Computer Services, Inc. to Plaintiff states:  "STUMBO, Inc. dba Henderson Ford . . . hereby
accepts such assignment of this Agreement and agrees to pay DCS all amounts due to DCS on or
after the Effective Date, and, notwithstanding the above paragraph, hereby assumes all rights,
obligations, and responsibilities of Dealer under this Agreement, whether before or after the
Effective Date of this assignment."  (Notice Removal Ex. A, at 12).  Dempewolf's assignment of
its contract with Defendant The Reynolds and Reynolds Company to Plaintiff, similarly states:

contained provisions requiring the parties arbitrate disputes in accordance with the rules of the American Arbitration Association ("AAA"). (Defs.' Mot. Compel Arbitration & Dismiss Ex. 2, at 15, DN 4-2; Defs.' Mot. Compel Arbitration & Dismiss Ex. 3, at 5, DN 4-3; Defs.' Mot. Compel Arbitration & Dismiss Ex. 4, at 5, DN 4-4).

On October 24, 2019, Defendants filed a Demand for Arbitration alleging Plaintiff's breach of contracts and damages totaling $573,603.41. (Notice Removal Ex. B, at 2-3, DN 1-2). This prompted Plaintiff, on November 1, to file a complaint in Kentucky state court for declaratory relief. (Notice Removal Ex. A, at 8-9). Specifically, Plaintiff sought a declaratory judgment "that the arbitration provisions . . . are not enforceable and are invalid on the basis of failure to state a choice of law, fraud, lack of consideration, lack of mutuality, and/or procedural and/or substantive unconscionability." (Notice Removal Ex. A, at 8). Defendants then removed that state court action on the basis of diversity jurisdiction, which Plaintiff argues was improper. (Notice Removal ¶¶ 5-9, DN 1; Pl.'s Mot. Remand 3-5, DN 9). Defendants also filed a motion to compel arbitration and dismiss. (Defs.' Mot. Compel Arbitration & Dismiss, DN 4). Plaintiff has since filed a motion to stay arbitration, as the arbitration process is currently ongoing. (Pl.'s Mot. Stay Arbitration 1-2, DN 11).

## II.  DISCUSSION

Plaintiff challenges the existence of diversity jurisdiction, arguing specifically that Defendants cannot prove the existence of the requisite amount in controversy. (Pl.'s Mot. Remand 3-5; Pl.'s Reply Defs.' Resp. Pl.'s Mot. Remand 1-3, DN 15). Plaintiff also argues that the Court should decline to exercise declaratory judgment jurisdiction over this case. (Pl.'s Reply Mot.

---

"STUMBO, Inc. dba Henderson Ford . . . hereby accepts such assignment of this Agreement and assumes all rights, obligations and responsibilities of Client under this Agreement." (Notice Removal Ex. A, at 13).

Remand 3-5).  Defendants seek to compel arbitration and dismiss this case.  (Defs.' Mot. Compel Arbitration & Dismiss).

A.  **Motion to Remand**

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Before the Court can address whether to compel arbitration, it must possess the requisite subject matter jurisdiction over this case to do so.

1.  *Diversity Jurisdiction*

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."  28 U.S.C. § 1332(a)(1).  Although Defendants are charged with the burden of demonstrating "more likely than not" that the amount in controversy requirement is met, the general rule is that "[i]n an action seeking a declaratory judgment ruling that the parties are not required to arbitrate, the arbitration demand determines the amount in controversy."  *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559-60 (6th Cir. 2010) (citation omitted); *Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC*, 164 F. Supp. 3d 273, 283 (D. Conn. 2016) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996); *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160-61 (2d Cir. 1998)); *see also* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3569 (rev. 3d ed. Aug. 2019 update) ("In determining the amount in controversy of a suit to compel arbitration, the court looks to the amount at stake in the arbitration—that is, the award that might reasonably result from an arbitration."  (citing *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1002, 1106-07 (9th Cir. 2010); *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 526 F.3d 1170,

1173 (8th Cir. 2008); *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786-87 (7th Cir. 2004); *N. Am. Thought Combine, Inc. v. Kelly*, 249 F. Supp. 2d 283, 285-86 (S.D.N.Y. 2003)). This general rule comports with the Sixth Circuit's instruction that "[t]he true value of arbitration, the 'object' of this litigation, cannot be determined without reference to the potential cost of the state claim to the [federal court] [plaintiff]." *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 F. App'x 194, 196 (6th Cir. 2005).

As noted above, Defendants' arbitration demand seeks $573,603.41 for Plaintiff's alleged breaches of contract, well over the $75,000 threshold. (Notice Removal Ex. B, at 2-3). Furthermore, "it does not appear to a legal certainty that [Defendants'] claim[s] [are] really for less than the jurisdictional amount." *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *2 (W.D. Ky. Dec. 19, 2013) (citing *Lodal, Inc. v. Home Ins. Co. of Ill.*, 156 F.3d 1230, 1998 WL 393766, at *2 (6th Cir. 1998)). "When deciding a motion to remand . . . [courts] may 'pierce the pleading' and consider summary judgment evidence, such as affidavits presented by the parties." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952-56 (6th Cir. 2012)). A declaration from The Reynolds and Reynolds Company recites that the amount listed in the arbitration demand stems from Plaintiff's default on its monthly payment obligations under the respective contracts with Defendants for "computer hardware, software, data, and related services." (Robinson Decl. 2-3, DN 4-1). Plaintiff has presented no countervailing proof regarding the amount in controversy. The amount in controversy requirement is met here and the Court otherwise properly possesses subject matter jurisdiction over this case.[2]

---

[2] Diversity is not contested. Plaintiff is incorporated with its principal place of business in Kentucky, while Defendants all are incorporated with their principal places of business elsewhere. (Notice Removal ¶ 6).

## 2.   *Declaratory Judgment Jurisdiction*

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court's exercise of jurisdiction under the Declaratory Judgment Act, however, is discretionary— not mandatory. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).   The Sixth Circuit has outlined five factors to analyze when determining whether a district court should exercise jurisdiction over a request for a declaratory judgment:

> (1) whether the action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted); *see also Scottdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008). These factors embody three main principles:  efficiency, fairness, and federalism.  *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citation omitted).

At the outset, Plaintiff's argument against this Court's exercise of jurisdiction over this declaratory judgment action is somewhat hypocritical.  In response to Defendants' demand for arbitration, Plaintiff filed a state court declaratory judgment action seeking to obtain a ruling that the contractual arbitration provisions are unenforceable.  (Notice Removal Ex. A, at 8).  After Defendants removed this action to this Court, Plaintiff now argues that it would be improper for this Court to exercise jurisdiction over this declaratory judgment action but proper for a Kentucky

state court to do so.  For the reasons stated below, it would be no more or less proper for a federal versus a state court to exercise jurisdiction over the same declaratory judgment action.

In applying the first two discretionary factors, although the declaratory action would not settle the ultimate breach of contract controversy between the parties, the declaratory action would serve a useful purpose in clarifying the legal relations in issue—determining the proper forum for the resolution of the underlying breach of contract action is the first step towards properly adjudicating this dispute.  More importantly, this declaratory action will lead to the resolution of the entire controversy, as this action will be resolved once the proper forum is identified.  In applying the third discretionary factor, there is no indication that the declaratory remedy is being used for "procedural fencing" or "to provide an arena for a race for res judicate"—the parties simply seek to have the proper forum identified for the resolution of the ultimate controversy between the parties.  In applying the fourth and fifth discretionary factors, the only alternative "better or more effective" remedy argued by Plaintiff is a decision on this issue by a state versus a federal court.  (Pl.'s Reply Mot. Remand 5).  Which court this action proceeds in is immaterial, however—application of federal law versus state law in a lawsuit involving arbitration has been well delineated by the U.S. Supreme Court.  *See generally AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011).  Assuming jurisdiction over this case would not increase friction between federal and state courts or improperly encroach upon state court jurisdiction—the Federal Arbitration Act's ("FAA"), 9 U.S.C. § 2, "pre-emptive effect" restricts the use of state law in ascertaining the validity of arbitration provisions.[3]  *Id.*

---

[3] Plaintiff does not refute Defendants' general assertion that the FAA generally controls here, apart from Plaintiff's contention that state law determines whether Plaintiff ever agreed to arbitration. (Defs.' Mot. Compel 9-11; Pl.'s Mot. Stay 3, DN 11).

As discretionary factor two and to some extent discretionary factor one weigh in favor of the Court assuming declaratory judgment jurisdiction over this case, while all other factors remain neutral at best, the Court will exercise declaratory judgment jurisdiction.

## B.      Compel Arbitration and Dismiss

"[D]istrict courts in Kentucky evaluate a motion to compel arbitration as one for summary judgment under Fed. R. Civ. P. 56(c)." *Wilson v. CPB Foods, LLC*, No. 3:18-CV-014-CHB, 2018 WL 6528463, at *2 (W.D. Ky. Dec. 12, 2018) (citations omitted). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted) (citations omitted).

The three contracts at issue here adopt the "commercial arbitration rules of the American Arbitration Association" ("AAA Rules"). (Defs.' Mot. Compel Arbitration & Dismiss Ex. 2, at 15; Defs.' Mot. Compel Arbitration & Dismiss Ex. 3, at 5; Defs.' Mot. Compel Arbitration & Dismiss Ex. 4, at 5). Rule 7(a) of AAA Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Rules, R-7(a) (available at https://www.adr.org/Rules, last visited on March 2, 2020). As the Southern District of Ohio recognized in *Aerpio Pharmaceuticals, Inc. v. Quaggin,* No. 1:19-cv-794, 2019 WL 4717477 (S.D. Ohio Sept. 26, 2019):

> The overwhelming majority of federal courts . . . have . . . held that an agreement by parties that their disputes shall be resolved by arbitration in accordance with the Rules of the AAA is "clear and unmistakable" evidence that the parties intended to submit the question of arbitrability to the arbitrator. . . .
>
> Numerous courts within the Sixth Circuit have reached this conclusion and have held that "when a contract requires arbitration pursuant to AAA Rules—which expressly give the question of arbitrability to the arbitrator—'it clearly and

unmistakably vests the arbitrator, and not the district court, with authority to decide which issues are subject to arbitration.'" . . .

> The majority of federal circuit courts to have considered this issue have also decided that "an arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court."

*Id*. at \*11-12 (citations omitted).

"Where the parties have clearly and unmistakably agreed to arbitrate arbitrability, a court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause." *In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, No. 11md2286-MMA (MDD), 2019 WL 398169, at \*5 (S.D. Cal. Jan. 31, 2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-72 (2010)). "[A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr.*, 561 U.S. at 68. The Court in *Midland Credit* expounded on the requisite analysis:

> "[T]he threshold issue of whether the delegation clause is even applicable to a certain party must be decided by the Court." In other words, a delegation clause granting authority to an arbitrator to decide issues of application, enforceability, or interpretation are only applicable to the parties of the agreement. Accordingly, the Court must first decide which parties are bound by the delegation clauses before the arbitrator can determine the applicability, enforceability, and interpretation of the arbitration agreements.

*Midland Credit*, 2019 WL 398169, at \*6 (citations omitted).

Under Kentucky, Michigan, and Ohio law,[4] it is immaterial that Plaintiff is the assignee, rather than an original party, to the contracts:

> Viewed from the perspective of an assignment, the assignee of a contract takes that contract with all rights of the assignor and subject to all defenses that the obligor

---

[4] The parties identify Kentucky, Michigan, and Ohio law all as potentially governing the contracts at issue. (Defs.' Mot. Compel Arbitration & Dismiss 6-7, 13; Pl.'s Resp. Def.'s Mot. Compel Arbitration & Dismiss 2, DN 10; Pl.'s Mot. Remand 3).

> may have had against the assignor. The assignee stands in the shoes of the assignor and has no greater rights against the obligor than the assignor had.

*Citizens Fed. Bank, F.S.B. v. Brickler*, 683 N.E.2d 358, 410 (Ohio Ct. App. 1996) (citation omitted). "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. Ct. App. 2004) (citations omitted). "Generally, an assignee . . . acquires no greater right than was possessed by his assignor . . . but simply stands in the shoes of the latter, subject to all equities and defenses which could have been asserted against the chose in the hands of the assignor at the time of the assignment." *Whayne Supply Co. v. Morgan Constr. Co.*, 440 S.W.2d 779, 782-83 (Ky. 1969) (citations omitted). In sum, under Kentucky, Michigan, and Ohio law, an arbitration clause is generally held to apply to the assignee of a contract. *Holland v. Lvnv Funding, LLC*, No. 5:16-CV-00069, 2016 WL 6156187, at *6-7 (W.D. Ky. Oct. 21, 2016) (citations omitted); *Trinity Health Sys. v. MDX Corp.*, 907 N.E.2d 746, 753 (Ohio Ct. App. 2009) (citations omitted); *Bd. of Trs. of Mich. State Univ. v. Research Corp.*, 898 F. Supp. 519, 521-22 (W.D. Mich. 1995). Therefore, Plaintiff is subject to the arbitration provisions, including the adoption of the AAA Rules delegating the issue of arbitrability to the arbitrator, under each of the three assigned contracts.

Plaintiff's contention that "[t]he 'gateway' issue of arbitrability can only be resolved by the courts" is meritless. (Pl.'s Resp. Def.'s Mot. Arbitration & Dismiss 3, DN 10). Plaintiff's assumption of Dempewolf's contracts subjected it to the arbitration provisions within those contracts. Although Plaintiff challenges the enforceability of the arbitration provisions generally, "if a party challenges the enforceability of the arbitration agreement as a whole and not specifically as to the delegation clause, the challenge is for the arbitrator." *Midland Credit*, 2019 WL 398169,

at *6 (citing *Rent-A-Ctr.*, 561 U.S. at 67-76).[5]  As in *Rent-A-Center*, Plaintiff only argues that

because the entirety of all three arbitration agreements is invalid, the delegation clauses within

those agreements are invalid as well.  (Pl.'s Reply Mot. Stay Arbitration 4, 8, 10, DN 16);[6] *Rent-*

*A-Ctr.*, 561 U.S. at 73 ("[Challenger] opposed the motion to compel [arbitration] on the ground

that the *entire arbitration agreement*, including the delegation clause, was unconscionable.")

(emphasis in original) (internal quotation marks omitted).  Like *Rent-A-Center*, rather than

specifically challenge the delegation clauses, Plaintiff has argued that the entirety of the arbitration

provisions must be rendered invalid, "[b]ut [the Court] need not consider that claim because none

of [Plaintiff's] . . . challenges w[ere] specific to the delegation provision. . . . [Plaintiff] did not

make any arguments specific to the delegation provision; he argued that . . . the *entire* [arbitration

agreement should be rendered] invalid." *Rent-A-Ctr.*, 561 U.S. at 73.

Plaintiff's fleeting references to the delegation provisions in an attempt to challenge them

are even less clear than the challenger's references to the delegation provisions in *Jones v. Waffle*

*House, Inc.*, 866 F.3d 1257 (11th Cir. 2017):

> While the district court addressed [Challenger's] claims as if they specifically
> challenged the delegation provision, it is not clear to us that [Challenger's] claims
> were sufficiently focused on that provision alone rather than on the agreement as a
> whole.  In district court, [Challenger] claimed that "the arbitration agreement does
> not even encompass [his] claims in this lawsuit," that the agreement as a whole "is
> an unauthorized ex parte communication between counsel and a represented party,"
> and that "the arbitration agreement is unconscionable."  The only arguments that
> were even remotely aimed at the delegation provision were that the district court
> should recognize the wholly groundless exception and decide gateway issues, and
> that the district court "should not delegate questions implicating its managerial
> discretion regarding the conduct of class actions."  However, neither of these
> arguments is a specific challenge to the validity or enforceability of the delegation
> provision.  [Challenger] now asserts, for the first time on appeal, that "[t]he

---

[5] "This calculus remains the same where the delegation agreement exists by virtue of the incorporation of the AAA rules." *Mercandante v. XE Serv., LLC*, 78 F. Supp. 3d 131, 140 n.8 (D.D.C. 2015) (citations omitted).

[6] These are the only references Plaintiff makes to the delegation provisions of the contracts.

delegation clause itself was an unauthorized ex parte communication in violation of ethical rules and hence illegal." *But [Challenger] does not offer any details about why the delegation provision itself, apart from the agreement as a whole, was an ex parte communication and instead attacks the allegedly ex parte nature of the entire agreement, of which the delegation provision was one part. As we read this record, [Challenger] did not directly challenge the delegation provision. Instead, the heart of his argumentation was directed at the agreement as a whole.*

*Id*. at 1265 (emphasis added). Because Plaintiff does not offer any specific argument regarding the unenforceability of the delegation provisions specifically, Plaintiff's assertion that the delegation provisions should be rendered invalid on the same basis as the three arbitration agreements as a whole "[is] not for this Court to decide." *Preferred Care of Del., Inc. v. Konicov*, No. 5:15-cv-88-KKC-EBA, 2016 WL 2593924, at *8 (E.D. Ky. May 4, 2016); *see also In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2019 WL 6838631, at *5 (S.D. Fla. Sept. 26, 2019) ("Plaintiffs argue that the delegation clause is part of an unconscionable contract and should therefore not be enforced. . . . Plaintiffs do not identify any specific defect in the delegation clause and instead argue only that it is unconscionable 'for the same reasons' as the contract more generally. Plaintiffs' argument is thus an 'attack [on] the allegedly [unconscionable] nature of the entire agreement, of which the delegation provision [is] one part.' Given the presence of an express delegation clause, Plaintiffs' 'challenge to the contract *as a whole*' is 'committed to the power of the arbitrator[,]' and not the Court." (emphasis in original) (citations omitted)); *Mercandate*, 78 F. Supp. 3d at 143 ("*Rent-A-Center* allows Plaintiffs to challenge a delegation provision by arguing that a feature in common with the entire agreement . . . renders the delegation provision invalid . . . . However, Plaintiffs' argument is missing a necessary link: Plaintiffs do not show how the mistake regarding the nature of the entire contract affects the validity of the delegation provision specifically.").

Because arbitration will be ordered and is the appropriate forum for the resolution of the dispute between the parties, Plaintiff's motion to stay arbitration will be denied. Additionally, because Plaintiff has not requested a stay of this matter pending final resolution by the arbitrator, and because all of Plaintiff's claims will be referred to arbitration, this matter will be dismissed without prejudice. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017) (affirming district court's dismissal without prejudice of matter because "[t]he FAA requires a court to stay proceedings pending arbitration only 'on application of one of the parties.' Vague references to a stay do not constitute a request for a stay." (internal citation omitted) (citation omitted)); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (affirming district court's order to compel arbitration and dismiss the complaint because although Section 3 of the FAA requires a stay of proceedings when a separate claim is referable to arbitration, it does not require a stay when all the claims will be arbitrated).

### III.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion to Remand (DN 9) and Plaintiff's Motion to Stay Arbitration (DN 11) are **DENIED**.

2.      Defendants' Motion to Compel Arbitration and Dismiss (DN 4) is **GRANTED**, and this action is **DISMISSED**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 31, 2020

cc:      counsel of record